# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **RAVARO CONSTRUCTION CORPORATION,**<br>**Plaintiff,**<br><br>v.<br><br>**EDWIN GONZÁLEZ MONTALVO, in his official and personal capacity as Secretary of the Puerto Rico Department of Transportation and Public Works; ENRIQUE ROSAS, in his official and personal capacity as DTOP Assistant Secretary for Administration and Finance; FRANCISCO J. DOMENECH FERNÁNDEZ, in his official capacity and personal as Executive Director of the Puerto Rico Fiscal Agency and Financial Advisory Authority; ÁNGEL L. PANTOJA RODRÍGUEZ, in his official and personal capacity as Secretary of the Puerto Rico Department of the Treasury; the PUERTO RICO DEPARTMENT OF TRANSPORTATION AND PUBLIC WORKS; the COMMONWEALTH OF PUERTO RICO; the FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; and JOHN DOE OFFICIALS 1–10,**<br>**Defendants.** | **Federal Constitutional and Civil-Rights Claims**<br><br>**Jury Trial Demanded as to Issues Triable as of Right** |

## VERIFIED COMPLAINT

**COMES NOW**, Plaintiff Ravaro Construction Corporation, through undersigned counsel, who respectfully avers and prays as follows:

1. Plaintiff Ravaro Construction Corporation ("Ravaro"), through undersigned counsel, brings this verified civil action for declaratory and prospective relief concerning an adjudicated property right and a timely proof of claim that, according to a June 12, 2026 letter

**VERIFIED COMPLAINT**
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

2

from the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), remains in the Commonwealth's Title III alternative-dispute-resolution and claims-reconciliation process.

2. This action arises from two 2003 construction contracts with the Puerto Rico Department of Transportation and Public Works ("DTOP"), a June 24, 2015 final arbitration award, and Puerto Rico judgments that rejected DTOP's challenge to the award while eliminating interest and attorneys' fees. Ravaro does not seek to relitigate the merits of the construction dispute or revive any component eliminated on appeal.

3. The record identifies several amounts at different procedural stages: the award's stated total of $2,127,206; an apparent post-appeal arithmetic balance of $1,978,892; a later collection figure of $1,978,872; and a reported proof-of-claim amount of $2,006,693. Ravaro discloses and separates those figures and requests a determination, in the proper Title III-coordinated forum, of the allowed principal, debtor, Plan classification, and any interest independently permitted by law.

4. Ravaro's federal theories do not rest on nonpayment alone. They are pleaded in the alternative and concern the alleged use of sovereign authority after judgment—including the prohibition on attaching public funds, Puerto Rico's statutory judgment-payment regime, denial of execution, and the Title III injunction invoked by AAFAF—to foreclose every enforcement path while the acknowledged Claim has remained unresolved.

5. The First Circuit distinguishes a public entity's proprietary contract breach from sovereign action that destroys a property right. *Massó-Torrellas v. Mun. of Toa Alta*, 845 F.3d 461, 467–69 (1st Cir. 2017). Ravaro therefore pleads its constitutional counts only in the alternative and only to the extent the complete Title III record and discovery establish sovereign action beyond breach or delay.

**VERIFIED COMPLAINT**
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

3

6. This Complaint does not request attachment, execution, priority payment, or collection from public or Title III debtor property. Ravaro seeks declarations concerning its federal rights, disclosure of the Claim's status, and a prompt, reasoned, and reviewable claims process, all subject to the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), the confirmed Plan of Adjustment, and the Confirmation Order.

7. If any requested determination belongs in, must be referred to, or must be coordinated with the Commonwealth's Title III proceeding, Ravaro requests a stay, transfer, referral, or coordination of the affected issue—not an order circumventing the Title III process.

## I. PARTIES

8. Ravaro is a Puerto Rico corporation with its principal place of business in Puerto Rico. It performed the construction work, prosecuted the arbitration, defended the award through final review, and filed the proof of claim described below. For correspondence and notice, Ravaro's business representative is Horacio Frau, P.O. Box 685, Mercedita, Puerto Rico 00716; telephone (787) 678-1185; and email tacho@gmail.com or hfrau@csmdelamar.com. The records supplied by Ravaro do not identify a current physical street address. A public business directory separately lists Centro Regional de Distribución, Ponce, Puerto Rico 00733, and telephone (787) 841-6406; Ravaro identifies that listing as unverified and not as a designated address for service.[1]

9. Defendant Financial Oversight and Management Board for Puerto Rico (the "Oversight Board" or "FOMB") is sued solely in its statutory capacity as representative of the Commonwealth debtor under 48 U.S.C. § 2175(b). Ravaro alleges that FOMB administers or supervises the claims-reconciliation process relevant to Proof of Claim No. 18570. FOMB's

---

[1] *Ravaro Construction Corporation*, Infopáginas, https://infopaginas.com/b/ponce/ravaro-construction-corporation-1 (last visited Aug. 6, 2026).

**VERIFIED COMPLAINT**                                                                                          4
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

published contact points include telephone (787) 641-0001; general comments at comments@promesa.gov; communications at commsteam@promesa.gov; Communications Director Matthias Rieker at matthias.rieker@promesa.gov; and Press Secretary Sylvette Santiago at sylvette.santiago@promesa.gov. FOMB's current contact page does not publish a physical or mailing address; older official FOMB correspondence used P.O. Box 192018, San Juan, Puerto Rico 00919-2018. For Title III claim inquiries, the federal court and Kroll publish puertoricoinfo@ra.kroll.com, (844) 822-9231 toll free for the United States and Puerto Rico, and (646) 486-7944 for international callers, generally available from 10:00 a.m. to 7:00 p.m. Atlantic Standard Time with Spanish assistance. Kroll's current published settlement-response address is Puerto Rico Settlement Offer Processing, c/o Kroll Restructuring Administration LLC (formerly Prime Clerk LLC), 850 Third Avenue, Suite 412, Brooklyn, New York 11232. Those Kroll inquiry contacts are not alleged to constitute filing or service by email.[2]

10.     Defendant Commonwealth of Puerto Rico is the Title III debtor represented by FOMB. The arbitration and Commonwealth-court records identify the public counterparty as the Commonwealth, on behalf of DTOP and its former Directorate of Urbanism. The Office of the Governor may be contacted at La Fortaleza, 63 Calle Fortaleza, Old San Juan, Puerto Rico 00901; P.O. Box 9020082, Old San Juan, Puerto Rico 00902-0082; and telephone (787) 721-7000. The Puerto Rico Department of Justice's Assistant Secretariat for Civil Affairs states that it represents the Commonwealth and its officials in civil proceedings. Its physical address is Department of

---

[2] *Contact Us*, Fin. Oversight & Mgmt. Bd. for P.R., https://oversightboard.pr.gov/contact/ (last visited Aug. 6, 2026); *Debt*, Fin. Oversight & Mgmt. Bd. for P.R., https://oversightboard.pr.gov/debt/ (last visited Aug. 6, 2026); Fin. Oversight & Mgmt. Bd. for P.R., Letterhead Correspondence, P.O. Box 192018, San Juan, P.R. 00919-2018, https://docs.oversightboard.pr.gov/n/id6ek3qs8yrm/b/BUD_DOCS/o/Emergency%2BReserve%2BLaura_361.pdf (Aug. 21, 2020); *PROMESA*, U.S. Dist. Ct. for the Dist. of P.R., https://promesa.prd.uscourts.gov/ (last visited Aug. 6, 2026); *PROMESA: Special Education Settlement Response Portal*, Kroll Restructuring Admin. LLC, https://forms.ra.kroll.com/efiling/fr/ra/promesa/new?form-version=1 (last visited Aug. 6, 2026).

Justice, Fourth Floor, 677 Calle Teniente César González, corner of Avenida Jesús T. Piñero, San Juan, Puerto Rico 00919; its mailing address is P.O. Box 9020192, San Juan, Puerto Rico 00902-0192; and its main telephone is (787) 721-2900. Published civil contacts include Susana Peñagarícano Brown, Assistant Secretary for Civil Affairs, extension 1404, spenagaricano@justicia.pr.gov; Juan C. Ramírez Ortiz, Deputy Assistant Secretary, extension 1406, juramirez@justicia.pr.gov; Marcia I. Pérez Llavona, Director of Federal Litigation and Bankruptcy, extension 1421, marperez@justicia.pr.gov; and Godohaldo Pérez Torres, Director of Tax, Collection, and Expropriations, extension 1450, gperez@justicia.pr.gov. The Department's public citizen-contact email is ayudaalciudadano@justicia.pr.gov. Ravaro's June 1, 2026 demand also listed fax (787) 724-4770, but the current Justice contact pages reviewed do not publish that fax number.[3]

11.    Defendant DTOP is a department of the Commonwealth and the contracting agency identified in the contracts, arbitration award, and judgments. The supplied adjudicative record does not identify the Puerto Rico Highways and Transportation Authority as the contracting party or judgment debtor. Ravaro reserves the right to amend if certified records or the Claim Register identify a different responsible debtor or entity. DTOP's physical address is Centro Gubernamental Roberto Sánchez Vilella, 300 Avenida José de Diego, Edificio Sur, Piso 10, San Juan, Puerto Rico 00911; its mailing address is Box 41269, Minillas Station, San Juan, Puerto Rico 00940-1269; its

---

[3] *Office of the Governor (La Fortaleza)*, Gobierno de P.R., https://www.pr.gov/directorio-de-agencias/oficina-del-gobernador-la-fortaleza-5 (last visited Aug. 6, 2026); *Secretaría Auxiliar de lo Civil*, Dep't of Just. of P.R., https://www.justicia.pr.gov/secretarias-y-oficinas/secretaria-auxiliar-de-lo-civil/ (last visited Aug. 6, 2026); *Oficina de Ayuda al Ciudadano*, Dep't of Just. of P.R., https://www.justicia.pr.gov/secretarias-y-oficinas/oficina-de-ayuda-al-ciudadano/ (last visited Aug. 6, 2026).

main telephone is (787) 722-2929; its general email is infodtop@dtop.pr.gov; and its public-records email is transparencia@dtop.pr.gov, with published extensions 12132 and 12069.[4]

12.     Defendant Edwin González Montalvo is sued in his official capacity as Secretary of DTOP and in his personal capacity only for his own conduct alleged below. Puerto Rico law charges the Secretary with superintendence over Commonwealth public works and related public-property registries and archives, and authorizes the Secretary to execute public-works contracts and approve their provisional and final liquidation. P.R. Laws Ann. tit. 3, §§ 411–412. Those duties connect González Montalvo to DTOP's custody and certification of the two contracts, payment certifications, liquidation and judgment records, agency-side factual position on Proof of Claim No. 18570, designation of DTOP record custodians, and implementation of prospective disclosure relief. (Ex. 18, Bates Nos. 000116–000124.) Ravaro does not allege that the DTOP Secretary may allow, classify, or schedule a Title III claim—a function AAFAF's response attributes to FOMB. The personal-capacity claim does not rest on his title or on respondeat superior; it is limited to any proved post-notice decision, direction, approval, or deliberate failure by González Montalvo to perform non-Title-III acts within his own authority.

13.     Defendant Enrique Rosas is sued in his official capacity as DTOP's Assistant Secretary for Administration and Finance and in his personal capacity only for his own conduct alleged below. The June 1, 2026 notice was addressed to Rosas in that capacity and requested preservation and disclosure of records concerning the final judgment, Proof of Claim No. 18570, payment status, and responsible custodians. (Ex. 18, Bates Nos. 000116–000124.) Based on that title and notice, Ravaro alleges on information and belief that Rosas has delegated operational

---

[4] *Department of Transportation and Public Works (DTOP)*, Gobierno de P.R., https://www.pr.gov/directorio-de-agencias/departamento-de-transportacion-y-obras-publicas-dtop-5 (last visited Aug. 6, 2026); *Sobre DTOP*, Dep't of Transp. & Pub. Works of P.R., https://www.dtop.pr.gov/sobre-dtop (last visited Aug. 6, 2026).

responsibility for DTOP accounting, accounts-payable, budget, payment-status, and agency claim files, or can identify the officials who do. The precise delegation and internal routing of the notice are in Defendants' control and are pleaded subject to confirmation. No Title III allowance or scheduling authority is attributed to Rosas, and the personal-capacity claim is limited to his own proved post-notice conduct within his operational authority.

14.     Defendant Francisco J. Domenech Fernández is sued in his official capacity as AAFAF's Executive Director and in his personal capacity only for his own conduct alleged below. AAFAF is the Commonwealth's fiscal agent, financial adviser, and reporting agent; must coordinate the Government's communication and cooperation with FOMB; supervises implementation of certified fiscal plans; and oversees the restructuring, renegotiation, and adjustment of covered governmental obligations. P.R. Laws Ann. tit. 3, § 9365(a)–(c). Its Executive Director is its chief executive officer and directs and supervises AAFAF's personnel and functions. *Id.* § 9367. AAFAF's Chief Legal Officer answered Ravaro's June 1 notice, identified Claim No. 18570 and its ADR posture, and transmitted FOMB's reported claim history. (Ex. 19, Bates Nos. 000125–000126.) Domenech Fernández is therefore connected to AAFAF-held correspondence, reports, transmittals, and coordination with FOMB and DTOP, and to implementing prospective relief limited to those records and communications. Ravaro does not allege that AAFAF or Domenech Fernández may allow, disallow, or schedule the Claim. His personal-capacity liability is limited to any proved personal adoption, direction, approval, or deliberate continuation of withholding nonprivileged AAFAF records or coordination within his authority after actual notice.

15.     Defendant Ángel L. Pantoja Rodríguez is sued in his official capacity as Secretary of the Puerto Rico Department of the Treasury and in his personal capacity only for his own

conduct alleged below. Puerto Rico law assigns the Treasury Secretary responsibility for central governmental accounting and for designing or approving agency accounting systems and payment procedures. P.R. Laws Ann. tit. 3, § 283c. Ravaro's June 1, 2026 notice was addressed to the Treasury Secretary and requested judgment-payment and related fiscal records. (Ex. 18, Bates Nos. 000116–000124.) Pantoja Rodríguez is connected only to Treasury-held central-accounting, payment-status, remittance, appropriation, and certification records, including any Treasury implementation of a payment plan or insufficiency determination under P.R. Laws Ann. tit. 3, §§ 9141–9142. No supplied record shows that he made a Title III ADR decision or controls FOMB's Claim schedule. The personal-capacity claim is limited to his own proved post-notice conduct concerning Treasury records and procedures within his authority.

16.     John Doe Officials 1–10 are the presently unidentified Commonwealth, DTOP, AAFAF, Treasury, or claim-administration custodians and decisionmakers who maintain the Claim Register-related agency records, proof-of-claim attachments, nonconfidential ADR transmittals and status records, any claim objection, DTOP's agency claim file, or Treasury and judgment-payment records for Claim No. 18570. They are sued in their official capacities for prospective relief and in their personal capacities only for their own conduct after notice. To the extent a Doe is employed by or acts for FOMB rather than the Commonwealth, the personal-capacity claim is asserted only if discovery establishes that the Doe acted under color of territorial law and is a proper person under 42 U.S.C. § 1983; Ravaro does not imply a Bivens claim. Ravaro will seek leave to substitute names and particularize conduct after identification. No personal-capacity claim is asserted merely because of title, employment, or supervisory status.

17.     The natural-person defendants—González Montalvo, Rosas, Domenech Fernández, Pantoja Rodríguez, and John Doe Officials 1–10—are sued in both their official and

personal capacities as specifically limited in this Complaint. FOMB, the Commonwealth, and DTOP are institutional defendants and are not capable of being sued in a personal capacity. The personal-capacity claim seeks relief only for each individual's own unconstitutional conduct and resulting incremental injury; it does not seek to impose vicarious liability, collect the judgment or Claim No. 18570 from debtor or public property, or hold any present official personally responsible for periods before that person assumed office or acquired actual or constructive notice.

## II.    JURISDICTION, VENUE, AND TITLE III POSTURE

18.    This action presents federal constitutional claims under the Fifth and Fourteenth Amendments, as applicable to Puerto Rico, and 42 U.S.C. § 1983, 1988, together with requests for declaratory relief concerning a Title III proof of claim. This Court therefore has federal-question jurisdiction under 28 U.S.C. § 1331, civil-rights jurisdiction under 28 U.S.C. § 1343 over the § 1983 claims against the official defendants, and authority to grant declaratory and further relief under 28 U.S.C. §§ 2201–2202. Supplemental jurisdiction over any territorial-law issue forming part of the same case or controversy exists under 28 U.S.C. § 1367.

19.    This Court also has original, nonexclusive jurisdiction over civil proceedings arising under or related to the Commonwealth's Title III case under 48 U.S.C. § 2166(a)(2). This action is related to that case because the asserted federal rights concern Claim No. 18570, its treatment under the confirmed Plan, and the continuing conduct of entities and officials involved in claims reconciliation. An action against FOMB, and an action otherwise arising out of PROMESA, must be brought in this District. 48 U.S.C. § 2126(a).

20.    Venue is proper in this District under 28 U.S.C. § 1391(b) because the defendants reside in Puerto Rico for venue purposes and a substantial part of the events or omissions occurred here. Puerto Rico is also the venue of the related Title III proceeding. 48 U.S.C. § 2167.

**VERIFIED COMPLAINT**
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

10

21.    This pleading initiates a civil action in the United States District Court for the District of Puerto Rico. It is not filed in a Puerto Rico court and is not captioned as an adversary proceeding in the Title III docket.

22.    The Commonwealth's Plan of Adjustment was confirmed on January 18, 2022, and became effective on March 15, 2022. PROMESA incorporates 11 U.S.C. §§ 362, 922, 944, and 524 through 48 U.S.C. § 2161(a). Ravaro disclaims any request to execute upon, attach, or collect from debtor property in violation of the stay, discharge injunction, Plan, or Confirmation Order.

23.    The First Circuit has recognized that an action filed in violation of an applicable stay may be void, that 11 U.S.C. § 922 can reach suits against officers when the ultimate objective is a claim against the debtor, and that a substantive theory remains subject to procedural allowance, waiver, and discharge rules. *Hernández-Castrodad v. Steidel-Figueroa*, No. 23-1872, slip op. at 11–18 (1st Cir. July 1, 2026). Ravaro alleges a timely proof of claim but does not contend that timely filing eliminates any applicable procedural restriction.

24.    If the stay, discharge injunction, Plan, Confirmation Order, or claims-reconciliation procedures require the requested disclosures, scheduling, allowance, or classification to proceed in the Commonwealth's Title III case, Ravaro requests that the affected matter be routed through and under the direction of the Title III court rather than adjudicated independently on this civil docket. Section 2166(d)(3) directs transfer between districts to the district in which the Title III case is pending; because this action is filed in that same District, Ravaro invokes § 2166(d)(3) only if a transfer within its terms becomes appropriate and otherwise requests related-case assignment, coordination, or other lawful intra-district routing. 48 U.S.C. § 2166(a)(2), (d)(3). After such routing, Ravaro requests referral to a United States Magistrate Judge under 28 U.S.C. § 636 only

if the Title III court determines that referral is authorized, including as contemplated by section 8(c)–(d) of the governing ADR Procedures.

25.     The official-capacity claims seek prospective compliance with federal law and a constitutionally adequate process. *Ex parte Young*, 209 U.S. 123, 159–60 (1908). Ravaro does not use those claims to demand a retroactive treasury payment forbidden by *Edelman v. Jordan*, 415 U.S. 651, 663–68 (1974). Any monetary component of a prepetition claim or takings remedy is sought exclusively through claim allowance and distributions authorized by the Plan.

26.     The Commonwealth and DTOP are named only to the extent jurisdiction, waiver, PROMESA, or the confirmed Plan permits. FOMB is sued only in its statutory capacity under 48 U.S.C. § 2175(b), with relief limited by any applicable immunity, waiver, or exception. Ravaro does not allege that the Commonwealth or DTOP is a "person" for purposes of 42 U.S.C. § 1983.

**VERIFIED COMPLAINT**
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

12

## III.    FACTUAL ALLEGATIONS

### A.    Contracts and Arbitration

27.    On August 20, 2003, Ravaro and DTOP entered Contract No. DU-02-GUM-03 for reconstruction of structures in Guayama's urban center. The original contract amount was $1,439,200 and the amended amount was $1,728,413.54. (Ex. 16, Bates Nos. 000073–000074.)

28.    On November 10, 2003, Ravaro and DTOP entered Contract No. DU-02-GUM-01-02-03 for construction of single-family housing in Guayama. The original contract amount was $2,456,258 and the amended amount was $2,642,632.56. (*Id.* at Bates Nos. 000072–000075.)

29.    Disputes arose from DTOP's contract administration. The parties ultimately submitted those disputes to a three-member arbitration panel after proceedings to compel arbitration and written submission agreements. (*Id.* at Bates Nos. 000067–000070.)

30.    The panel conducted fourteen evidentiary hearings beginning on April 25, 2014. The record included testimony, documents, and post-hearing submissions from both sides. (*Id.* at Bates No. 000068.)

31.    The panel found, among other things, that DTOP failed or delayed in providing permits, resolving lead-related conditions, correcting lot measurements, designating project professionals and inspection, processing payment certifications, and making timely payments. The panel found DTOP's conduct obstinate and in breach of the contracts. (*Id.* at Bates Nos. 000078–000079.)

32.    On June 24, 2015, the panel issued its Final Award. It awarded $502,083 under Contract No. DU-02-GUM-03 and $1,625,123 under Contract No. DU-02-GUM-01-02-03, for a

stated total of $2,127,206. The award also stated interest at six percent per year from November 16, 2014 until payment. (*Id.* at Bates Nos. 000079–000081.)

33.    The $502,083 subtotal included a $50,398 legal/professional-fee component, and the $1,625,123 subtotal included a $97,916 legal/professional-fee component. (*Id.* at Bates Nos. 000079–000080.)

**B.    Post-Construction Condition and Continuing Public Use**

34.    The two contracts covered work at eighteen parcels or lots in Guayama's urban center, including reconstruction of existing structures of historic value, demolition of ruins, construction of new buildings, and construction of single-family and multifamily housing.

35.    On April 11, 2026, Ravaro's President, Horacio Frau Iturregui, and a companion visited Guayama and photographed fifteen of the eighteen project structures. The photographs below were taken during that visit and depict the continuing condition and use of properties produced through the two DTOP contracts.

36.    The photographs show that the completed properties continue to be occupied and used. Ravaro alleges that public-office properties produced through the contracts are presently being used by the Commonwealth of Puerto Rico and its agencies, including the Puerto Rico State Elections Commission, the Puerto Rico Office of the Patient Advocate, and the Puerto Rico Office of the Advocate for Older Persons. Other project properties are used by the Municipality of Guayama for public offices and programs, including its Human Resources Office, Casa Artesanal Guayamesa, and Programa Mujer Segura, while the photographed housing properties remain in residential use.

37.    Derkes Street No. 64. Photographs 1985 and 1986 depict the reconstructed structure and a sign identifying the Puerto Rico State Elections Commission, Permanent Registration Board,

**VERIFIED COMPLAINT**

Ravaro Construction Corporation v. Edwin González Montalvo, et al.

14

Guayama Region. Ravaro alleges that this project property is presently being used by the

Commonwealth of Puerto Rico through the State Elections Commission.



*Photograph 1985. Exterior of the project property at Derkes Street No. 64.*



*Photograph 1986. Puerto Rico State Elections Commission sign identifying the Permanent Registration Board, Guayama Region.*

38.    Bruno Street No. 5. Photographs 1987 and 1988 depict the reconstructed structure, its use as the Municipality of Guayama Human Resources Office, and a commemorative plaque identifying the Commonwealth of Puerto Rico's Urban Center Revitalization Project. The plaque

**VERIFIED COMPLAINT**                                                    16
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

describes reconstruction of urban-center structures under Governor Sila María Calderón and a

public renewal program emphasizing civic and cultural amenities and enjoyment of public spaces.



*Photograph 1987. Reconstructed structure at Bruno Street No. 5, used as the Municipality of Guayama Human Resources Office.*



*Photograph 1988. Commonwealth of Puerto Rico plaque for the Urban Center Revitalization Project at Bruno Street No. 5.*

39.     Bruno Street No. 7. Photographs 1990 and 1991 depict a reconstructed structure bearing signs for the Puerto Rico Office of the Patient Advocate and the Puerto Rico Office of the

**VERIFIED COMPLAINT**                                                                18
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

Advocate for Older Persons. Ravaro alleges that this project property is presently being used by

the Commonwealth of Puerto Rico to provide public services.



*Photograph 1990. Exterior of the project property at Bruno Street No. 7.*

**VERIFIED COMPLAINT** 19
Ravaro Construction Corporation v. Edwin González Montalvo, et al.



*Photograph 1991. Signs for the Puerto Rico Office of the Patient Advocate and Office of the Advocate for Older Persons at Bruno Street No. 7.*

**VERIFIED COMPLAINT**                                                                                          20
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

40.      Photograph 1992 depicts an additional one-story structure included among the Guayama project properties. The April 19, 2026 source letter does not state a street address or identify a particular public office for this photograph.



*Photograph 1992. One-story structure among the photographed Guayama project properties.*

**VERIFIED COMPLAINT**                                                        21
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

41.     Hostos Street No. 82. Photograph 1993 depicts a one-story project structure that

remains standing and in use within Guayama's urban center.



*Photograph 1993. Project property at Hostos Street No. 82.*

42.    Ashford Avenue No. 104. Photograph 1994 depicts a two-story multifamily project

property that remains in residential use.



*Photograph 1994. Two-story multifamily property at Ashford Avenue No. 104.*

**VERIFIED COMPLAINT**                                                             23

Ravaro Construction Corporation v. Edwin González Montalvo, et al.

43.     Derkes Street No. 108. Photograph 1996 depicts a one-story single-family project

property that remains in residential use.



*Photograph 1996. One-story single-family property at Derkes Street No. 108.*

**VERIFIED COMPLAINT**                                                                24

Ravaro Construction Corporation v. Edwin González Montalvo, et al.

44.     San Agustín Street No. 26. Photograph 1998 depicts the project property identified

as Casa Artesanal Guayamesa, a Municipality of Guayama public-service facility.



*Photograph 1998. Casa Artesanal Guayamesa at San Agustín Street No. 26, identified as a Municipality of Guayama facility.*

45.     Porrata Doria Street No. 70. Photographs 1999 and 2001 depict one-story attached

chalet-style structures comprising four housing units that remain in residential use.



*Photograph 1999. Attached housing units at Porrata Doria Street No. 70.*

**VERIFIED COMPLAINT**

Ravaro Construction Corporation v. Edwin González Montalvo, et al.

26



*Photograph 2001. Additional view of attached housing units at Porrata Doria Street No. 70.*

46.     Baldorioty Street No. 101. Photographs 2002 and 2003 depict a project property

identified as the Municipality of Guayama's Programa Mujer Segura facility, where the structure

is used to provide a public program.



*Photograph 2002. Programa Mujer Segura facility at Baldorioty Street No. 101.*

**VERIFIED COMPLAINT**                                                28
Ravaro Construction Corporation v. Edwin González Montalvo, et al.



*Photograph 2003. Front view of the Municipality of Guayama's Programa Mujer Segura facility.*

**VERIFIED COMPLAINT**                                                                29

Ravaro Construction Corporation v. Edwin González Montalvo, et al.

47.     Duque Street No. 64. Photograph 2004 depicts a single-family project property that

remains in residential use.



*Photograph 2004. Single-family property at Duque Street No. 64.*

**VERIFIED COMPLAINT**
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

30

48.     Duque Street No. 41. Photographs 2006 and 2008 depict a one-story single-family project property that remains in residential use.



*Photograph 2006. One-story single-family property at Duque Street No. 41.*

**VERIFIED COMPLAINT**
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

31



*Photograph 2008. Address detail for the project property at Duque Street No. 41.*

**VERIFIED COMPLAINT**                                                              32
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

49.    Angeli Street at the corner of Vellón Street, No. 45. Photograph 2009 depicts a one-

story project property that remains standing and in use.



*Photograph 2009. One-story project property at Angeli Street and Vellón Street, No. 45.*

**VERIFIED COMPLAINT**                                                                                          33
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

50.     Tetuán Street No. 14. Photograph 2013 depicts a one-story project property that

remains in residential use.



*Photograph 2013. One-story project property at Tetuán Street No. 14.*

51.     Enrique González Street No. 43. Photograph 2015 depicts a two-story multifamily project property that remains standing and in use.



*Photograph 2015. Two-story multifamily property at Enrique González Street No. 43.*

## C.     Judicial Review, Finality, and Amount Reconciliation

52.     DTOP petitioned to vacate the Final Award in *Commonwealth of Puerto Rico v. Ravaro Construction Corp.*, Civ. No. KAC2015-0858 (P.R. Ct. First Instance May 2, 2017). On May 2, 2017, the Puerto Rico Court of First Instance dismissed the petition and sustained the Award. (Ex. 15, Bates Nos. 000049–000066.)

53.     On March 15, 2018, the Puerto Rico Court of Appeals rejected DTOP's arbitrability and jurisdiction challenges. The dispositive sentence modified the judgment "to eliminate the payment of interest and attorneys' fees" and otherwise affirmed. *Commonwealth of Puerto Rico v. Ravaro Construction Corp.*, No. KLCE201701288, slip op. at 12 (P.R. Ct. App. Mar. 15, 2018)

(Ex. 14, Bates Nos. 000037–000048). Ravaro therefore does not allege that the Award's interest instruction or identified fee components survived unmodified.

54.     The Court of Appeals denied reconsideration on May 14, 2018. (Ex. 13, Bates No. 000036.) The Puerto Rico Supreme Court denied a second reconsideration on November 9, 2018; notice issued on November 14, 2018; and mandate issued on November 16, 2018. (Exs. 10–12, Bates Nos. 000031–000035.)

55.     The final adjudicative record establishes DTOP's liability but requires a precise reconciliation of the amount remaining after appellate modification. The Award's two subtotals total $2,127,206. Subtracting the two identified legal/professional-fee components—$50,398 and $97,916—produces an apparent balance of $1,978,892.

56.     Later collection materials, including Ravaro's February 4, 2022 internal status email and the 2024–2025 appellate filings, state a post-appeal principal of $1,978,872. (Exs. 1, 3, and 6, Bates Nos. 000001–000007, 000009–000018, and 000025–000026.) That later figure is $20 less than the apparent arithmetic balance. Ravaro discloses the difference rather than treating either amount as conclusively established.

57.     The June 12, 2026 AAFAF letter described below reports that Proof of Claim No. 18570 was filed for $2,006,693.

| Procedural stage | Amount | Record basis and treatment |
|---|---|---|
| Final Award before appellate modification | $2,127,206 | Exhibit 16, Bates Nos. 000079–000081. |
| Apparent balance after removing identified legal/professional-fee components | $1,978,892 | $2,127,206 less $50,398 and $97,916. The exact effect of the appellate mandate remains to be determined. |

| Procedural stage | Amount | Record basis and treatment |
|---|---|---|
| Later collection correspondence | $1,978,872 | Exhibits 1, 3, and 6. This figure is $20 below the apparent arithmetic balance. |
| Proof of Claim No. 18570 | $2,006,693 | As reported in the June 12, 2026 AAFAF letter as Exhibit 19. |

58.     Ravaro seeks a reasoned determination of the exact allowed principal after review of the certified Award, the appellate mandate, the proof-of-claim documents, and the Claim Register. The $2,006,693 proof-of-claim amount is not alleged to be interchangeable with the original Award or either post-appeal principal figure.

59.     Ravaro seeks interest only if, and to the extent, it is independently authorized by governing postjudgment law, the controlling mandate, the Confirmation Order, and the Plan. Ravaro does not seek to reinstate any interest or attorneys' fees eliminated by the Court of Appeals.

**D.      Proof of Claim and Title III Status**

60.     AAFAF's June 12, 2026 letter reports that the Title III Claim Register reflects Ravaro's filing of Proof of Claim No. 18570 against DTOP on May 24, 2018 for $2,006,693, before the applicable general bar date. (Ex. 19, Bates No. 000125.) The letter identifies the Claim by number, debtor, filing date, and amount, but the supplied exhibit package does not contain the Claim Register entry or the filed proof-of-claim form and attachments.

61.     The Commonwealth's Plan of Adjustment became effective on March 15, 2022. On September 20, 2024, the Title III court entered an order making the Second Amended and Restated ADR Procedures effective that day. *Order Amending Alternative Dispute Resolution Procedures* ex. A, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17-BK-3283-LTS (D.P.R. Sept. 20, 2024), ECF No. 28125 (the "ADR Order").

62.     Exhibit 19 states that FOMB has exclusive representation of the Title III debtors and is solely responsible for administering and reconciling claims; that FOMB continued to address Claim No. 18570 through ADR; and that the Claim remained in the ongoing claims-reconciliation process as of June 12, 2026. (Ex. 19, Bates Nos. 000125–000126.)

63.     Without disclosing any offer term, Exhibit 19 reports two concrete ADR communications: FOMB sent Ravaro a settlement offer on September 24, 2024—four days after entry of the ADR Order—and re-sent the offer on August 19, 2025, 329 days later. (Ex. 19, Bates No. 000126.) The same letter states that, as of June 12, 2026, neither Ravaro nor its legal representatives had responded. *Id.* Ravaro pleads that reported nonresponse candidly and does not attribute the entire interval after September 24, 2024 exclusively to Defendants.

64.     The nonprivileged procedural excerpt attached as Exhibit 19 establishes the dates and reported posture above. Ravaro does not attach, quote, or rely on the offer's amount, terms, negotiation statements, or any other compromise communication to prove liability or the amount of the Claim. *See* Fed. R. Evid. 408; ADR Order ex. A § 2(g).

65.     The ADR Order supplies objective process benchmarks. A compliant ADR notice must be served at the address in the most recent proof of claim and may request verification or supplementation; if the notice does not include an offer, the debtor must make one within sixty days; and the relied-on documents must accompany the notice or offer. ADR Order ex. A §§ 1(c), 2(b). A claimant ordinarily has twenty-five days after receipt to respond, and nonresponse is deemed a rejection. *Id.* § 2(c). Within ten days after rejection, the debtor must file an Offer Exchange Impasse Notice; when rejection is deemed from nonresponse, the notice must address the debtor's outreach and the claimant's position on mediation. *Id.* § 2(f). The debtor also must

**VERIFIED COMPLAINT**                                                           38
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

file an ADR Status Notice within sixty days after the first ADR notice and every sixty days thereafter while ADR remains pending. *Id.* § 7(d).

66. If—and only if—the September 24, 2024 transmission was a properly served ADR notice or offer governed by those provisions, the reported nonresponse would constitute a deemed rejection and would trigger the next nonconfidential procedural steps described in the ADR Order. The supplied record contains no proof of the operative service address or receipt date and no copy of an ADR Notice, document request, Offer Exchange Impasse Notice, outreach certification, ADR Status Notice, Mediator's Impasse Notice, unresolved-claim opportunity notice, claim objection, or scheduling order for Claim No. 18570. Ravaro therefore requests production of any such nonprivileged filing rather than alleging that a document not in its possession does not exist.

67. If evaluative mediation occurred, the ADR Order generally calls for party submissions fourteen days before mediation, an evaluation within twenty-eight days after mediation subject to a limited extension, a twenty-one-day accept-or-reject period, termination within seventy-five days after the evaluation, and a subsequent unresolved-claim notice. ADR Order ex. A § 3(c)–(f). No supplied exhibit identifies a mediator, mediation date, evaluation, extension, acceptance or rejection, termination date, or post-mediation scheduling communication for Claim No. 18570.

68. The ADR Order preserves Title III adjudication and limits ADR to claim amount rather than priority, classification, or distribution. *Id.* §§ 7(a)–(b), 8(a). No order in the supplied record allows, disallows, estimates, reclassifies, or otherwise resolves Claim No. 18570, and no supplied document gives a reasoned basis for any objection or a date for adjudication. The Claim Register entry, proof-of-claim attachments, nonprivileged procedural filings, any objection, and

any scheduling order must therefore be produced and reconciled before the exact allowed amount, debtor, and Plan class can be determined.

69.    The resulting documented chronology is: May 24, 2018 proof-of-claim filing; March 15, 2022 Plan effective date; September 20, 2024 ADR Order; September 24, 2024 reported offer; August 19, 2025 reported re-send; June 1, 2026 notice and preservation demand; and June 12, 2026 AAFAF response. (Exs. 18–19, Bates Nos. 000116–000126.) As of the August 6, 2026 filing date, the supplied record contains no later reasoned allowance decision or hearing notice.

E.    **Collection Efforts and Business Harm**

70.    On May 26, 2021, Ravaro's President, Horacio Frau Iturregui, sent a written demand to DTOP describing the final debt and requesting a meeting. He reported that Ravaro had been unable to operate since late 2014 because of the dispute's financial effects and litigation costs. (Ex. 7, Bates Nos. 000027–000028.) This allegation is offered to show the ongoing business impact and need for a definite process, not emotional distress or personal injury.

71.    A February 4, 2022 internal status email recited a post-appeal principal of $1,978,872 and summarized efforts to locate a payment path. (Ex. 6, Bates Nos. 000025–000026.)

72.    On November 13, 2023, Ravaro appeared and moved in the Court of First Instance for execution of the final judgment. The record includes Ravaro's execution request and proposed order and writ, but the proposed order and writ are unsigned and are not alleged to have been entered. (Exs. 4–5, Bates Nos. 000019–000024.)

73.    Ravaro's November 18, 2024 appellate filing reproduces the November 27, 2023 Court of First Instance order as follows: "Como el DTOP es una instrumentalidad del ELA, no procede embargar bienes en ejecución de sentencia. Véase Stump Corp. v. Tribunal Superior, 99 DPR 179 (1970). En virtud del derecho vigente, se le ordena al DTOP a informar en 20 días el

estado del pago de la Sentencia en este caso." (Ex. 3, Bates No. 000010.) A faithful English translation is: "Because DTOP is an instrumentality of the Commonwealth, attachment of property in execution of judgment is unavailable. *See Stump Corp. v. Superior Court*, 99 P.R. Dec. 179 (1970). Under governing law, DTOP is ordered to report within twenty days on the status of payment of the Judgment in this case." Ravaro identifies Exhibit 3 as its appellate filing reproducing the order, not as a certified copy of the November 27 order itself.

74.     That appellate filing further reports that DTOP filed a "Motion in Compliance with Order" on December 27, 2023; Ravaro replied on February 20, 2024; the Court of First Instance denied execution by order issued February 22 and notified February 23, 2024; a March 21 order scheduled a May 29 hearing; the Commonwealth moved on May 22 to cancel it; the court cancelled it on May 24; Ravaro sought reconsideration on June 6; and a June 21 notice referred back to the May 24 order. (Ex. 3, Bates Nos. 000012–000014.) The official Court of Appeals decision independently confirms that the February 22 order denied execution because the request violated the prohibition on attachment of public funds. *Commonwealth v. Ravaro Construction Corp.*, No. KLAN202400783, slip op. at 1, 4 (P.R. Ct. App. Aug. 30, 2024).

75.     The same filings state that the Puerto Rico Court of Appeals dismissed Ravaro's postjudgment appeal, No. KLAN2024-00783, on August 30, 2024 on jurisdictional and timeliness grounds. (Exs. 1 and 3.)

76.     Ravaro petitioned the Puerto Rico Supreme Court for certiorari on November 18, 2024. (Ex. 3, Bates Nos. 000009–000018.) The Supreme Court denied certiorari for lack of jurisdiction on January 17, 2025. (Ex. 2, Bates No. 000008.) Ravaro moved for reconsideration on January 27, 2025. (Ex. 1, Bates Nos. 000001–000007.)

**VERIFIED COMPLAINT**                                                41
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

77.    Ravaro does not rely on or offer the December 4, 2019 settlement proposal identified as Exhibit 9 to prove liability or amount. *See* Fed. R. Evid. 408. Nothing in this Complaint quotes or uses that compromise proposal as substantive evidence.

**F.    June 2026 Notice, AAFAF Response**

78.    On June 1, 2026, through counsel, Ravaro sent by certified mail a notice of intent to file a federal civil action, demand for payment, and preservation notice addressed to the Secretary of Justice and relevant DTOP, AAFAF, and Treasury officials, including the official defendants. Exhibit 18 contains the notice and its addressee pages. (Ex. 18, Bates Nos. 000116–000124.) Ravaro alleges actual receipt only where a delivery record or responsive writing establishes it; AAFAF's response establishes that AAFAF received the notice.

79.    On June 12, 2026, AAFAF's Chief Legal Officer, Martha L. Acevedo-Peñuela, responded, identified the matter as a DTOP debt associated with the March 15, 2018 appellate judgment, and reported Claim No. 18570, its May 24, 2018 filing date, and its stated $2,006,693 amount. (Ex. 19, Bates No. 000125.)

80.    AAFAF invoked PROMESA and paragraph 59 of the Confirmation Order, stated that payment and enforcement must proceed exclusively through Title III, attributed sole claims-administration and reconciliation responsibility to FOMB, and supplied the ADR dates and reported nonresponse pleaded above. (Ex. 19, Bates Nos. 000125–000126.) Paragraph 59 of the Confirmation Order enjoins acts to collect, recover, attach, or otherwise enforce discharged claims outside the Plan. *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment* ¶ 59, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, No. 17-BK-3283-LTS (D.P.R. Jan. 18, 2022), ECF No. 19813.

81.    The supplied Commonwealth-court and arbitration documents are principally in Spanish. Every Spanish-language exhibit offered in this action will be submitted by a certified English translation that satisfies D.P.R. Civ. R. 5(c).

82.    Despite the final merits adjudication, repeated demands, and reported acknowledgment of a timely claim, Ravaro alleges that it has not received a final allowance or disallowance order, a payment determination, or a completed and reviewable ADR resolution.

**G.     Sovereign Measures Alleged in the Alternative**

83.    Ravaro alleges more than DTOP's failure to pay as a contracting party. The Commonwealth's nonattachment rule was invoked to prevent execution against public property, and the later appellate filings report that the Court of First Instance applied that rule to deny the requested writ.

84.    Puerto Rico's final-judgment payment provisions, P.R. Laws Ann. tit. 3, §§ 9141–9142, establish installment and fiscal-control mechanisms for final judgments and restrict attachment of public funds. For a judgment between $1,000,000.01 and $7,000,000, section 9141 generally contemplates a payment period of more than four years and one day but not more than seven years, subject to its terms and exceptions. Section 9142 addresses the absence or exhaustion of available appropriations and bars attachment of public funds. Ravaro's 2003 contracts predate Act No. 66-2014, which enacted the challenged regime.

85.    The supplied record contains no written payment plan approved for this Judgment under section 9141; no agency certification of insufficient funds under section 9142; no required confirmation by the Office of Management and Budget; no Treasury payment schedule; and no writing expressly citing sections 9141–9142 as the basis for delaying this Judgment. The November 27, 2023 language reproduced in Exhibit 3 invoked nonattachment and *Stump Corp.*,

not sections 9141–9142. (Ex. 3, Bates No. 000010.) Exhibit 19 invoked PROMESA and the

Confirmation Order, not those territorial sections. (Ex. 19, Bates Nos. 000125–000126.)

86.     Accordingly, Counts II and V challenge sections 9141–9142 only as applied if

Defendants' records establish actual reliance on those provisions to govern Ravaro's payment

timing, deny a definite schedule, or withhold funds. In the absence of such proof, Ravaro seeks

disclosure and a declaration limited to the nonattachment rule and other measures actually applied;

it does not ask the Court to issue an advisory facial ruling on sections 9141–9142.

87.     AAFAF separately invoked the federal Title III Confirmation Order and ongoing

claims-reconciliation process. Ravaro acknowledges that PROMESA is federal law and does not

allege that PROMESA itself is a state law subject to the Contract Clause.

88.     Taken together, the alleged measures have prevented ordinary execution outside

Title III while the acknowledged Claim allegedly remains unresolved inside Title III. Whether that

combination lawfully channels the debt through restructuring or crosses a constitutional line is

pleaded in the alternative and depends on the complete Claim and Title III record.

**H.     Ripeness, Constructive Denial, and Unreasonable Delay**

89.     As of August 6, 2026, Claim No. 18570 had been pending 2,996 days since May

24, 2018; the Plan had been effective 1,605 days since March 15, 2022; 2,315 days elapsed from

the proof-of-claim filing to the first reported offer; the re-send occurred 329 days after that offer;

and 352 days had elapsed after the re-send. The June 12 response arrived 2,941 days after the claim

filing and 1,550 days after Plan effectiveness. (Ex. 19, Bates Nos. 000125–000126.)

90.     Procedural due process treats unjustified delay as a fact-specific constitutional

question that considers the importance of the private interest and harm caused by delay, the

government's justification and its relationship to the governmental interest, and the risk of an

erroneous interim result. *Federal Deposit Insurance Corp. v. Mallen*, 486 U.S. 230, 242–43 (1988). Ravaro alleges a final adjudicated contract right, continuing inability to obtain a reviewable Claim determination, business harm identified in its May 26, 2021 demand, and no disclosed justification or schedule in the nonprivileged record sufficient to explain the full period. (Ex. 7, Bates Nos. 000027–000028; Ex. 19, Bates Nos. 000125–000126.)

91.     Ravaro alleges constructive denial or unreasonable delay in the alternative: if the reported offer was properly served, the ADR Order treated nonresponse as rejection and required further procedural steps; if it was not properly served, the record does not show that the response period began. In either event, the supplied record shows neither a final reasoned decision nor the nonconfidential filing needed to identify the next reviewable step. Ravaro seeks that status and process—not an inference that its own reported nonresponse is irrelevant.

92.     For the alternative takings theory, *Knick v. Township of Scott*, 588 U.S. 180, 189–94, 202–03 (2019), eliminates a state-litigation prerequisite, while *Pakdel v. City & County of San Francisco*, 594 U.S. 474, 478–80 (2021) (per curiam), retains a modest finality requirement asking whether the government has reached a definitive position. Ravaro alleges finality only if the complete record shows that sovereign nonattachment, fiscal controls, and the Title III process have definitively foreclosed a reasonable, certain, and reviewable path to treatment. If the record instead shows an unfinished Title III step, Ravaro requests Title III-directed completion, a stay, or routing—not dismissal with prejudice on ripeness grounds.

93.     The First Circuit cautions that a constitutional theory remains subject to PROMESA's procedural rules and that a civil action whose ultimate objective is recovery from the debtor may implicate Title III's stay, discharge, and injunction. *Hernández-Castrodad v. Steidel-Figueroa*, No. 23-1872, slip op. at 10–18 (1st Cir. July 1, 2026). Ravaro therefore requests

that all disclosure, scheduling, allowance, and any monetary treatment occur through and under the direction of the Title III court.

## I.        Personal-Capacity Conduct, Notice, and Causation

94.      On June 12, 2026, the First Circuit held that the confirmed Commonwealth Plan's discharge "does not apply to personal-capacity claims" against Commonwealth officers or employees and that such claims "are therefore not subject to any injunction impeding their prosecution." *Hernández Zorrilla v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, No. 25-1993, slip op. at 3, 7–8, 20–24 (1st Cir. June 12, 2026). The court affirmed the Title III court in full. *Id.* at 24.

95.      *Hernández Zorrilla* distinguishes official-capacity claims, which are nominally against the sovereign, from personal-capacity claims, in which "the real party in interest is the individual, not the sovereign" and any judgment runs against the individual rather than the employing entity. *Id.* at 20–21 (quoting *Lewis v. Clarke*, 581 U.S. 155, 163 (2017), and citing *Kentucky v. Graham*, 473 U.S. 159, 167–68 (1985)). The possibility of discretionary defense or indemnification under Puerto Rico's Law 9 does not convert a properly pleaded personal-capacity claim into a discharged claim against the debtor. *Id.* at 5–6, 10, 17–18.

96.      *Hernández Zorrilla* decides the Plan-discharge and injunction issue; it does not establish the elements of Ravaro's constitutional claim, personal involvement, causation, damages, or the defeat of qualified immunity. Ravaro therefore pleads those matters separately and does not treat the decision as automatic liability.

97.      Personal liability under 42 U.S.C. § 1983 may not rest on title, respondeat superior, or an official's general supervisory authority. Each defendant is liable, if at all, only for that person's own acts or omissions that caused the deprivation. *See Ashcroft v. Iqbal*, 556 U.S. 662,

676 (2009); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 16 (1st Cir. 2011); *Feliciano-Hernández v. Pereira-Castillo*, 663 F.3d 527, 533–35 (1st Cir. 2011). The allegations below identify the act, omission, knowledge, authority, and causal role attributed to each individual, subject to records uniquely within Defendants' control.

98.     The June 1, 2026 certified-mail notice identified the final judgment, Claim No. 18570, the prolonged delay, the asserted constitutional injury, the records sought, and the requested preservation measures. (Ex. 18, Bates Nos. 000116–000124.) AAFAF's June 12 response establishes institutional receipt by AAFAF. (Ex. 19, Bates Nos. 000125–000126.) Ravaro alleges on information and belief that the separately addressed DTOP and Treasury notices were received and routed in the ordinary course to the named addressees or their executive offices; the delivery confirmations, mail logs, delegations, and internal routing records are within Defendants' exclusive control. If those records establish that a particular individual lacked notice before filing, Ravaro does not attribute pre-notice conduct to that individual.

99.     As to González Montalvo, Ravaro alleges on information and belief that, after the notice reached DTOP's executive office, he received it or was informed of its substance and had authority to direct a search, preservation, certification, or identification of DTOP's contract, liquidation, judgment, agency-claim, and custodian records. He nevertheless personally decided, directed, approved, or knowingly permitted DTOP to provide no identified custodian, certification of absence, agency position, or nonprivileged record response before filing. Those ministerial and agency-record acts did not require him to allow, classify, schedule, or pay a Title III claim and were not prohibited by PROMESA.

100.    As to Rosas, Ravaro alleges on information and belief that, after the notice reached DTOP's Administration and Finance component, he received it or was informed of its substance

and had operational authority over, or the ability to identify the custodians of, accounting, accounts-payable, budget, payment-status, and agency-claim files. He nevertheless personally decided, directed, approved, or knowingly permitted no search result, payment-status record, custodian identification, preservation confirmation, or certification of absence to be supplied before filing. Ravaro attributes to Rosas only conduct proved to have occurred within his delegated authority and after notice.

101.    As to Domenech Fernández, AAFAF's written response demonstrates that AAFAF received and acted on the notice. Ravaro alleges on information and belief that the Chief Legal Officer's response was prepared, authorized, transmitted, or knowingly adopted within the Executive Director's chain of authority and that Domenech Fernández knew the Claim remained unresolved and that FOMB was invoking ADR and the Confirmation Order. (Ex. 19, Bates Nos. 000125–000126.) Despite AAFAF's statutory coordination role, he personally decided, directed, approved, or knowingly permitted AAFAF to give no nonprivileged coordination record, no request for a definite FOMB status or schedule, and no certification that responsive AAFAF records were absent. The personal-capacity claim concerns only those AAFAF-controlled acts, not FOMB's exclusive allowance authority.

102.    As to Pantoja Rodríguez, Ravaro alleges on information and belief that, after the notice reached Treasury's executive office, he received it or was informed of its substance and had authority to direct a search, preservation, certification, or identification of central-accounting, appropriation, payment-plan, insufficiency-certification, and payment-procedure records. He nevertheless personally decided, directed, approved, or knowingly permitted Treasury to provide no responsive record, custodian identification, preservation confirmation, or certification of

absence before filing. Those record and accounting acts did not require him to adjudicate Claim No. 18570 and were not prohibited by PROMESA.

103.    As to John Doe Officials 1–10, Ravaro alleges on information and belief that each Doe personally received, maintained, routed, withheld, or made a decision concerning one or more nonprivileged records identified in the June 1 notice or the ADR procedures; knew from the file, notice, offer, re-send, nonresponse, or assigned duties that the Claim lacked a final reasoned determination or disclosed schedule; possessed authority to produce, preserve, route, file, or certify the status of records within that Doe's custody; and nevertheless deliberately failed to perform that act. The Doe claim administrators responsible for the September 24, 2024 offer or August 19, 2025 re-send allegedly knew that nonresponse was treated as rejection yet failed to cause the required nonconfidential impasse and periodic status notices to be filed, if the transmission was a qualifying ADR notice governed by those requirements. ADR Order ex. A §§ 2(c), 2(f), 7(d). Ravaro will substitute names and identify each Doe's dates, employer, legal status, document, decision, and causal role after expedited identification discovery.

104.    The 2,996-day pendency alleged in paragraph 89 supplies context for the obviousness and gravity of the unresolved process; it is not alleged as a period for which every present official is personally responsible. Personal damages are limited to incremental procedural injury caused during each defendant's tenure and after that defendant acquired actual or constructive notice and a realistic opportunity to perform the non-Title-III act within that defendant's authority.

105.    Ravaro alleges more than negligent record handling or an erroneous legal conclusion. After notice of a final adjudicated right, a timely proof of claim, years of inactivity, concrete ADR benchmarks, and continuing business harm, each individual defendant allegedly

had readily available authority to take the limited record, routing, certification, or coordination step assigned to that person and consciously chose not to do so. Ravaro alleges that this deliberate inaction foreseeably prolonged the absence of a reasoned and reviewable process and was affirmatively linked to the incremental deprivation. *See Sánchez v. Pereira-Castillo*, 590 F.3d 31, 49–50 (1st Cir. 2009); *Feliciano-Hernández*, 663 F.3d at 535.

106.    The personal-capacity theory does not contend that any named Commonwealth official could override FOMB, adjudicate the Claim, authorize a Plan distribution, or disregard a lawful Title III order. It alleges instead that Defendants used or accepted PROMESA as a blanket and indefinite answer while declining to perform nonconflicting acts within their own custody and authority that were necessary to expose the Claim's posture to review and to move the matter to the authorized decisionmaker.

107.    Long before the events pleaded here, the Supreme Court held that a state may not destroy or finally defeat a protected adjudicatory interest through the government's own failure to comply with the procedures supplied for its determination, and that due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428–37 (1982). It also held that unjustified administrative delay is evaluated by the importance of the private interest, the justification and its relation to the governmental interest, and the harm and risk produced by delay. *Federal Deposit Insurance Corp. v. Mallen*, 486 U.S. 230, 242–43 (1988). Ravaro pleads these authorities to identify the claimed right; whether their application to each defendant was clearly established at the required level of specificity remains a defendant-by-defendant question on a developed record.

108.    After June 12, 2026, the Plan itself could not reasonably be treated as a perpetual discharge or injunction against properly pleaded personal-capacity claims against Commonwealth

**VERIFIED COMPLAINT**
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

50

officers or employees. *Hernández Zorrilla*, slip op. at 3, 20–24. Ravaro does not rely on that decision to excuse its reported nonresponse to the ADR offer or to bypass Title III; the personal-capacity claim addresses only each individual's own later conduct and seeks no recovery from debtor property.

109.    The facts concerning receipt, internal assignment, document custody, decision authorship, and the identity of the responsible Doe Officials are primarily within Defendants' possession. Ravaro pleads information-and-belief allegations only where supported by the certified notices, the AAFAF response, the officials' pleaded statutory functions, and the absence of any later nonprivileged response in the supplied record. Ravaro will amend or dismiss a personal-capacity allegation if discovery shows that the identified individual lacked notice, authority, participation, or causation.

## IV.    CLAIMS FOR RELIEF

### COUNT I — DECLARATORY RELIEF REGARDING THE FINAL JUDGMENT, PROOF OF CLAIM NO. 18570, AND TITLE III PROCESS

110.    Ravaro incorporates paragraphs 1 through 109 as if fully set forth here. This Count is asserted against FOMB in its statutory capacity; against the Commonwealth and DTOP only to the extent jurisdiction, waiver, PROMESA, and the Plan permit; and against the individual defendants only in their official capacities for prospective relief.

111.    An actual controversy exists concerning: (a) whether the merits liability reflected in the final judgment is final and not subject to relitigation; (b) the proper Title III debtor and Plan class; (c) the allowed principal and any independently permitted postjudgment interest; and (d) the disclosures, process, and schedule required to resolve Claim No. 18570.

112.    The Claim rests on adjudicated liability after arbitration, trial-court review, appellate modification, and final mandate. The merits of DTOP's liability are not open to relitigation, although timely objections concerning amount, debtor, classification, and Plan treatment may remain.

113.    Under 48 U.S.C. § 2166(a)(2) and 28 U.S.C. §§ 2201–2202, Ravaro requests a declaration defining the legal status of the final judgment, the reported Claim, and the federal rules governing their treatment, but only through and under the direction of the Title III court to the extent the requested determination affects allowance, classification, or Plan administration. This Count does not ask this civil docket to duplicate or bypass the Title III claims process.

114.    To the extent formal allowance, classification, or scheduling belongs in the Title III case, Ravaro requests routing to that proceeding; transfer under 48 U.S.C. § 2166(d)(3) if its statutory conditions are met; and, after routing, referral under 28 U.S.C. § 636 if authorized by the Title III court and consistent with ADR Order section 8(c)–(d). Ravaro requests that the Title III court direct disclosure of the Claim Register entry, proof-of-claim attachments, any nonprivileged objection, nonconfidential impasse and status notices, reconciliation log, governing procedures, and a firm schedule culminating in a written and reviewable determination.

115.    Ravaro further requests a determination—by the Title III court or under its direction—whether the Commonwealth, on behalf of DTOP, is the proper debtor for Claim No. 18570, which Plan class applies, what amount is allowed after the appellate modification, and what review is available. Confidential offer terms and protected mediation communications need not be filed publicly; Ravaro seeks only procedural facts and materials lawfully subject to disclosure.

### COUNT II — FIFTH AMENDMENT JUST COMPENSATION (PLEADED IN THE ALTERNATIVE)

**VERIFIED COMPLAINT**                                                                52
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

---

116.    Ravaro incorporates paragraphs 1 through 115 as if fully set forth here and pleads this Count only in the alternative. Any monetary component is asserted through the Title III claim process against the proper debtor; prospective declaratory relief is asserted against the responsible officials in their official capacities.

117.    The final judgment and the allowed portion of Claim No. 18570 are specific, adjudicated intangible property interests belonging to Ravaro. Contract and judgment rights can constitute property, although property status alone does not establish a taking. *Lynch v. United States*, 292 U.S. 571, 579 (1934); *Massó-Torrellas*, 845 F.3d at 467–69.

118.    Ravaro does not allege that an ordinary breach or nonpayment is itself a taking. *Massó-Torrellas* holds that conduct in the government's proprietary contracting capacity does not become a constitutional tort merely because the contractor is public. 845 F.3d at 467–69.

119.    The alternative taking alleged is the proved, definitive use of sovereign authority after judgment to destroy the practical enforcement incidents of Ravaro's adjudicated right: the nonattachment rule applied to deny execution; any actual application of P.R. Laws Ann. tit. 3, §§ 9141–9142 established by the requested records; and the Title III injunction invoked to prohibit collection outside the claims process while no final, reviewable treatment occurs inside it. The territorial statutes are included only if discovery shows written or operative reliance specific to this Judgment.

120.    Government action in a sovereign capacity that destroys a specific property incident is analytically distinct from contractual breach. *See Armstrong v. United States*, 364 U.S. 40, 44–49 (1960). The complete claim record and discovery will determine whether the challenged conduct crosses that line.

**VERIFIED COMPLAINT**
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

53

121.    If—and only if—Ravaro proves a valid, ripe prepetition takings claim, the confirmed Plan may not provide less than constitutionally required just compensation. *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 41 F.4th 29, 45–46 (1st Cir. 2022). That rule does not dispense with allowance, timeliness, finality, waiver, or other procedural requirements. *Hernández-Castrodad*, slip op. at 10–18.

122.    Ravaro requests a declaration whether the sovereign measures proved in this case effected a compensable taking and, if so, constitutionally required treatment of the Claim through the forum and procedure authorized by the Fifth Amendment, PROMESA, the Confirmation Order, and the Plan. Any monetary remedy shall be implemented only through claim allowance and Plan-authorized distributions.

### COUNT III — PROCEDURAL DUE PROCESS UNDER 42 U.S.C. § 1983 (PROSPECTIVE OFFICIAL-CAPACITY RELIEF)

123.    Ravaro incorporates paragraphs 1 through 122 as if fully set forth here. This Count is asserted only against González Montalvo, Rosas, Domenech Fernández, Pantoja Rodríguez, and John Doe Officials 1–10 in their official capacities for prospective relief.

124.    Ravaro has a protected interest in the final judgment and in a fair determination of its timely proof of claim under the Due Process Clause of the Fifth or Fourteenth Amendment, as applicable to Puerto Rico. A contract breach alone does not establish a due-process deprivation. *Medina Jiménez v. Almodóvar*, 650 F.2d 363, 370 (1st Cir. 1981). The challenged process is the alleged prolonged absence of a final, reasoned, and reviewable claim determination measured against the actual chronology, the ADR Order's conditional deadlines, and the factors identified in *Mallen*, 486 U.S. at 242–43.

**VERIFIED COMPLAINT**
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

54

125.    The requested prospective relief tracks each official's alleged connection: González Montalvo must identify and produce DTOP contract, liquidation, judgment, and agency claim records; Rosas must identify and produce DTOP accounting, budget, payment-status, and delegated administrative files; Domenech Fernández must identify and transmit AAFAF-held correspondence, reports, and coordination records concerning Claim No. 18570; Pantoja Rodríguez must identify and produce Treasury central-accounting, payment-plan, appropriation, and certification records; and the Doe Officials must produce the nonconfidential Claim and ADR records they actually maintain. No official is asked to exercise authority assigned exclusively to FOMB or the Title III court.

126.    The June 12, 2026 response identified the Claim and reported the ADR offer, re-send, and nonresponse, but did not provide a final allowance decision, the basis for any claim objection, an impasse or status notice, a firm adjudication schedule, or a reviewable determination. (Ex. 19, Bates Nos. 000125–000126.) The supplied record contains no later document curing those omissions.

127.    Ravaro seeks prospective process only, through and under the direction of the Title III court: production of the nonprivileged records assigned to each official above; identification of any objection and its stated grounds; disclosure of nonconfidential ADR status and impasse filings; a firm briefing, mediation, objection, or hearing schedule; and a written, reasoned, and reviewable determination by the authorized decisionmaker. Ravaro does not seek public disclosure of confidential offer terms or mediation communications.

128.    Ravaro requests an order, issued by or under the direction of the Title III court, requiring each responsible official within forty-five days to produce the records within that official's custody or certify their absence, identify the authorized next-step decisionmaker, and file

or obtain a nonconfidential status and scheduling notice for Claim No. 18570. Any merits determination, allowance, classification, or distribution must remain with the Title III court or its authorized delegate.

129.    That prospective relief addresses an alleged ongoing failure to provide a definite and reviewable process without converting the official-capacity claims into an order for retroactive treasury payment. *Ex parte Young*, 209 U.S. 123, 159–60 (1908); *Edelman v. Jordan*, 415 U.S. 651, 663–68 (1974).

130.    If Ravaro prevails on this Count, it seeks costs and reasonable attorneys' fees as authorized by 42 U.S.C. § 1988, subject to PROMESA, the Confirmation Order, and the Plan.

### COUNT IV — PROCEDURAL DUE PROCESS UNDER 42 U.S.C. § 1983 (PERSONAL-CAPACITY DAMAGES AGAINST THE INDIVIDUAL DEFENDANTS)

131.    Ravaro incorporates paragraphs 1 through 130 as if fully set forth here.

132.    This Count is asserted only against González Montalvo, Rosas, Domenech Fernández, Pantoja Rodríguez, and John Doe Officials 1–10 in their personal capacities. It is not asserted against FOMB, the Commonwealth, DTOP, AAFAF, Treasury, or any other governmental entity. Each named individual allegedly acted under color of territorial law while exercising or declining to exercise authority associated with that person's public office. A Doe employed by or acting for FOMB is included only if discovery establishes that the Doe acted under color of territorial law and is a proper § 1983 defendant.

133.    Ravaro's final judgment and timely filed proof of claim are alleged protected property interests. The challenged deprivation is not nonpayment alone; it is each individual's deliberate contribution, after notice, to constructive denial or unreasonable delay of a meaningful, reasoned, and reviewable procedure while every external enforcement route remained unavailable.

134.    Each individual defendant allegedly knew the material facts and the limited non-Title-III step within that person's authority; had a realistic opportunity to produce, preserve, route, identify, coordinate, or certify the relevant records or status; and personally decided, directed, approved, or knowingly permitted that step not to occur. The acts and omissions attributed to each defendant in the personal-capacity section are incorporated as that defendant's alleged affirmative link and causal contribution. Liability does not rest on supervisory status or the conduct of another person.

135.    The alleged conduct, if proved, was intentional or deliberately indifferent rather than merely negligent because the June 1 notice expressly identified the adjudicated right, extraordinary delay, claimed constitutional injury, requested records, and need for preservation, yet no named official supplied even a custodian identification, certification of absence, or other agency-controlled response before filing, except for AAFAF's limited June 12 letter. (Exs. 18–19, Bates Nos. 000116–000126.)

136.    The personal-capacity claim does not seek the amount of Claim No. 18570 as damages, compel payment or distribution, attach public assets, or obtain relief from a Title III debtor. It seeks compensatory damages only for additional injury proximately caused by each individual's own post-notice constitutional conduct, together with nominal damages if a violation is proved without compensable injury. *See Carey v. Piphus*, 435 U.S. 247, 266–67 (1978).

137.    The Commonwealth Plan does not discharge or enjoin properly pleaded personal-capacity claims against Commonwealth officers and employees, even if Law 9 creates a contingent possibility of defense or indemnification. *Hernández Zorrilla*, No. 25-1993, slip op. at 3, 5–6, 10, 17–24. Any personal-capacity judgment would run against the individual defendant, not the governmental entity. *Graham*, 473 U.S. at 167–68.

138.    Qualified immunity does not protect conduct that violates a constitutional right whose contours were sufficiently clear that a reasonable official in the defendant's position would understand the conduct to be unlawful. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 741 (2011). Ravaro alleges that *Logan*, *Mallen*, the express ADR benchmarks, the extraordinary documented delay, and the individualized June 1 notice gave fair warning that consciously blocking every meaningful status and review step—while invoking PROMESA as an indefinite shield—would violate due process. Ravaro recognizes that qualified immunity must be decided separately for each defendant based on the particular act, authority, notice date, and decisional context proved.

139.    If the evidence establishes evil motive or intent, or reckless or callous indifference to Ravaro's federally protected rights, Ravaro seeks punitive damages against the responsible individual defendant. *See Smith v. Wade*, 461 U.S. 30, 56 (1983). Ravaro also seeks costs and reasonable attorneys' fees under 42 U.S.C. § 1988. No punitive damages are requested from any governmental entity or from an individual solely because of official position.

### COUNT V — CONTRACT CLAUSE UNDER 42 U.S.C. § 1983 (ALTERNATIVE AS-APPLIED PROSPECTIVE RELIEF)

140.    Ravaro incorporates paragraphs 1 through 139 as if fully set forth here. This Count is asserted only against González Montalvo, Rosas, Pantoja Rodríguez, and John Doe Officials responsible for applying territorial payment law, in their official capacities for prospective, as-applied relief. It is not asserted against FOMB or Domenech Fernández based on PROMESA or the federal Confirmation Order.

141.    The Contract Clause addresses impairment caused by state law, not executive nonpayment. Ravaro bases this alternative Count only on P.R. Laws Ann. tit. 3, §§ 9141–9142, as enacted through Act No. 66-2014 and later amended, and only if the requested records establish

that a responsible territorial official actually applied those provisions to this Judgment in a way that eliminated or indefinitely suspended enforceability of Ravaro's preexisting 2003 contractual rights.

142.    Ravaro does not allege that PROMESA or the Confirmation Order is a state law subject to the Contract Clause. Under *Sveen v. Melin*, 584 U.S. 811, 819 (2018), the threshold question is whether state law substantially impairs the contractual relationship; if so, the law must be appropriately and reasonably drawn to advance a significant and legitimate public purpose.

143.    When a government impairs its own obligations, complete deference to its asserted reasonableness is not appropriate. *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 25–26 (1977).

144.    Ravaro alleges substantial impairment only to the extent a produced payment plan, no-funds certification, Treasury schedule, or other official record proves that the territorial measures were actually applied to do more than regulate payment timing and instead nullified the adjudicated obligation or denied any definite and reviewable mechanism for treatment. The present exhibit record does not itself establish that predicate, so this Count is pleaded conditionally and in the alternative.

145.    The First Circuit recently held that P.R. Laws Ann. tit. 3, §§ 9141–9142 could not be applied to substantially and perhaps indefinitely frustrate enforcement of a federal Title VII judgment under the Supremacy Clause. *García Colón v. State Ins. Fund Corp.*, Nos. 24-1786, 25-1067, slip op. at 36–42 (1st Cir. Feb. 27, 2026). Ravaro invokes that decision by analogy only and does not contend that it authorizes execution outside Title III.

146.    Ravaro seeks a declaration, through and under the direction of the Title III court where Plan administration is affected, defining the constitutional limit of any territorial measure proved to have been applied and prospective relief preventing its future use to deny a definite,

reviewable mechanism for treatment. This requested relief does not compel immediate payment or execution and remains subject to the Title III court's control over Claim allowance and Plan implementation.

147. If Ravaro prevails on this Count, it seeks costs and reasonable attorneys' fees as authorized by 42 U.S.C. § 1988, subject to PROMESA, the Confirmation Order, and the Plan.

## V. PRAYER FOR RELIEF

**WHEREFORE**, Ravaro respectfully requests that the Court:

a. Determine and declare the parties' legal rights and obligations concerning the final judgment and the current status, debtor, Plan class, ADR posture, and Plan treatment of Proof of Claim No. 18570;

b. Determine the amount supported by the certified Final Award, appellate modification, proof-of-claim record, and applicable law after reconciling the pleaded figures, but only in the Title III case or through and under the direction of the Title III court; route the matter there, transfer under 48 U.S.C. § 2166(d)(3) if its conditions are met, and refer under 28 U.S.C. § 636 only if authorized;

c. Declare that the underlying merits liability reflected in the final judgment is not subject to relitigation, while preserving any timely objection concerning amount, debtor, classification, or Plan treatment;

d. Through and under the direction of the Title III court, order FOMB in its statutory capacity and each responsible official, limited to records within that party's custody or control, to produce or file the complete Claim Register entry, proof-of-claim attachments, nonprivileged objections, nonconfidential impasse and status notices, reconciliation history

and log, and governing procedures for Claim No. 18570, without publicly disclosing protected settlement terms or mediation communications;

e.  Through and under the direction of the Title III court, require within forty-five days a nonconfidential status and scheduling notice identifying the authorized decisionmaker and next procedural event, followed by a written, reasoned, and reviewable determination by the Title III court or its authorized delegate;

f.  If Ravaro proves a valid, ripe compensable taking, declare the just-compensation requirement and direct constitutionally compliant treatment only through the forum and procedure authorized by the Fifth Amendment, PROMESA, the Confirmation Order, and the Plan, with any monetary component implemented solely through claim allowance and Plan-authorized distributions;

g.  Declare, only if the necessary facts and actual as-applied reliance are proved, that Puerto Rico's judgment-payment and nonattachment measures may not be used to nullify Ravaro's adjudicated right without a definite, reviewable mechanism consistent with the Constitution, PROMESA, the Confirmation Order, and the Plan;

h.  Award only postjudgment interest, if any, independently authorized by governing law, the controlling mandate, the Confirmation Order, and the Plan, without reinstating interest or attorneys' fees eliminated by the Court of Appeals;

i.  Award costs and reasonable attorneys' fees on Counts III–V to the extent authorized by 42 U.S.C. § 1988 and not prohibited by PROMESA, the Confirmation Order, or the Plan;

j.  Award against the responsible natural-person defendants in their personal capacities compensatory damages for incremental injury caused by their own post-notice unconstitutional conduct, nominal damages where appropriate, and punitive damages only

upon proof of the standard stated in *Smith v. Wade*, while excluding the amount of Claim No. 18570 and any recovery from debtor or public property for approximately $4.5 million dollars;

k.   Adjudicate the personal-capacity claims consistently with Hernández Zorrilla, without treating PROMESA, the Plan discharge, the Confirmation Order, or a possible Law 9 defense or indemnification request as a release or injunction protecting an individual from liability for that individual's own proved constitutional conduct;

l.   If any component of this action is governed by the Title III stay, discharge injunction, Confirmation Order, or claims-reconciliation procedure, stay or route that component through and under the direction of the Commonwealth's Title III court; transfer it under 48 U.S.C. § 2166(d)(3) where applicable; and preserve only relief that the Title III court determines may proceed;

m.   Grant a jury trial only on issues triable as of right, recognizing that claim allowance and equitable relief are for the Court; and

n.   Grant such other relief as is lawful, equitable, and consistent with this Court's jurisdiction and the Title III process.

## VI.   JURY DEMAND

Ravaro demands trial by jury on any issue triable as of right. This demand does not extend to Title III claim allowance, Plan implementation, or equitable and declaratory relief reserved for the Court.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on August 7, 2026.

**VERIFIED COMPLAINT**
Ravaro Construction Corporation v. Edwin González Montalvo, et al.

62

**VALENZUELA-ALVARADO, LLC**
MCS Plaza
255 Ponce de León Avenue
Suite 825, Hato Rey, San Juan
Puerto Rico 00917-1942
Tel. (787) 756-4053
Fax (787) 705-7415
www.valenzuelalaw.net

**/s/ José Enrico Valenzuela-Alvarado**

**JOSÉ ENRICO VALENZUELA-ALVARADO**
U.S.D.C.-P.R. No. 220104
jeva@valenzuelalaw.net
jose.enrico.valenzuela1@gmail.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

|  |  |
|---|---|
| **RAVARO CONSTRUCTION CORPORATION,**<br><br>**Plaintiffs,**<br><br>**v.**<br>**EDWIN GONZÁLEZ MONTALVO in his personal and official capcities, as SECRETARY OF THE PUERTO RICO DEPARTMENT OF TRANSPORTATION AND PUBLIC WORKS ("DTOP"), and as DIRECTOR OF THE PUERTO RICO HIGHWAYS AUTHORITY and the COMMONWEALTH OF PUERTO RICO,  ENRIQUE ROSAS, in his personal and official capacities, as SECRETARIO AUXILIAR DE ADMINISTRACIÓN Y FINANZAS OF DTOP; FRANCISCO J. DOMENECH FERNÁNDEZ, in his personal and official capacities, as EXECUTIVE DIRECTOR OF THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY ("AAFAF"); ÁNGEL L. PANTOJA RODRÍGUEZ, in his personal and official capacities, as SECRETARY OF THE PUERTO RICO DEPARTMENT OF THE TREASURY ("DEPARTAMENTO DE HACIENDA"); the COMMONWEALTH OF PUERTO RICO; and JOHN DOE OFFICIALS 1–10,**<br><br>**Defendants.** | **CIVIL NO.  26-___ (__)**<br><br>**Federal Civil Rights Violations**<br>**Jury Trial Demanded** |

**VERIFICATION**

**VERIFICATION**                                                                 2

Ravaro Construction Corporation v. Edwin González Montalvo, et al.

Civil No. 26-___ (___)

I, Horacio J. Frau Iturregui being first duly sworn, depose and state under penalty of perjury that I am an authorized representative of Ravaro Construction Corporation; that I have read the foregoing Verified Complaint; and that the factual allegations contained therein are true and correct to the best of my knowledge and belief.

In Puerto Rico, this 13 day of July, 2026.

**Authorized Representative
Ravaro Construction Corporation**